UNION CENTRAL LIFE INSURANCE COMPANY V. GERALD C. MANN, ATTORNEY GENERAL OF TEXAS, ET AL.

Motion No. 15229. Decided December 31, 1941.
Rehearing overruled February 4, 1942.
(158 S. W., 2d Series, 477.)

*Henry, Bickett & Bickett* and *Johnson & Rogers,* all of San Antonio, for relator.

The payment having been made to the State Treasury under protest, relator's failure to bring suit for its recovery within ninety days, as permitted by Article 5057b, did not render the payment voluntary. Harn v. Mexican Natl. Ry. Co., 86 Texas 68, 23 S. W. 381; Goldfrank, Frank & Co. v. Young, 64 Texas 432; Daniel v. Life Ins. Co. of Va., 102 S. W. (2d) 256.

*Gerald C. Mann,* Attorney General, *Grover Sellers,* First Assistant Attorney General, *Geo. W. Barcus, D. Burle Davis* and *Ocie Speer,* Assistants Attorney General, for respondents.

The appropriation of the money sued for was invalid because it was in violation of section 6 of Article 16 and of section 44 of Article 3 of the State Constitution, and the money was not paid to the State of Texas, but was paid to the State Treasurer. Rogers v. Daniel Oil & Royalty Co., 130 Texas 386, 110 S. W. (2d) 891; Corsicana Cotton Mills v. Sheppard, 123 Texas 352, 71 S. W. (2d) 247; Cameron County Water Imp. Dist. v. Handley, 275 S. W. 298.

*Thompson, Knight, Harris, Wright & Weisberg, James E. Henderson, Jr.,* and *Pinkney Grissom,* all of Dallas, and *F. L. Kuykendall,* of Austin, filed brief as amici curiae.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a mandamus proceeding, instituted directly in this Court by Union Central Life Insurance Company, of Cincinnati, Ohio, a life insurance corporation duly licensed to do business in this State, against Honorable Gerald C. Mann, Attorney General of Texas, and Honorable George H. Sheppard, State Comptroller of Public Accounts of Texas, to compel such officers to approve a certain money claim of the Insurance Company against the State of Texas. The facts of this case are undisputed, leaving only law questions to be decided.

The 47th Legislature of this State made an appropriation to pay this insurance company the sum of $13,899.64, as a "refund on occupation taxes erroneously collected." Acts 47th Leg. 1941, p. 1367. The Bill making the above appropriation contains the following provision:

"Section 2. It is specifically provided herein that before any claim shall be paid from funds hereby appropriated the same shall also have the approval of the State Comptroller and the Attorney General. It is further provided that any claim involving the refund of a franchise tax shall also carry the approval of the Secretary of State, in addition to the other officials herein named." Acts 47th Leg. 1941, p. 1372.

As will later appear, the claim involved in this action is not for refund of a franchise tax. It follows that the Secretary of State is neither a necessary nor a proper party to this suit.

The agreed statement of facts in this case shows that the Insurance Company has paid to this State taxes that it did not owe, in the following sums for the years indicated: For the year 1933, the sum of $2,774.00; for the year 1934, the sum of $3,887.12; and for the year 1935, the sum of $7,243.27. It is agreed that the $2,774.00 payment made in 1933 was made voluntarily and without any character of duress. The payments made in 1934 and 1935 were paid under circumstances which constitute them payments under duress, as defined by this Court in Austin National Bank v. Sheppard, 123 Texas 272, 71 S. W. (2d) 242, and National Biscuit Co. v. State, 134 Texas 293, 135 S. W. (2d) 687. This explains why the Insurance Company is only here contending for its right to collect the sum of $11,130.39, instead of $13,899.64, the amount appropriated. This statement regarding duress is made subject to the matter which we will later state and discuss.

In further explanation of this case, it appears that during the years above mentioned this Insurance Company was a life insurance company, duly incorporated under the laws of the State of Ohio. It is now, and has been throughout the times involved in this action, transacting business in this State, under certificates of authority duly issued by the proper authorities of Texas. During the years 1933, 1934, and 1935 this Insurance Company paid to the State Treasurer of this State all the annual occupation taxes provided by Article 4769, R. C. S. 1925, to be paid by it on its gross life insurance premium receipts. Also, for each of such years the Insurance Company paid to the State Treasurer taxes on the gross receipts on premiums collected by it on its annuity contracts. The taxes collected on annuity contract gross receipts amounted to the several sums already indicated. The taxes collected on gross premium receipts on annuity contracts were not owing by the Insurance Company. Daniel v. Life Ins. Co. of Va., 102 S. W. (2d) 256.

■ As already stated, the taxes paid by the Insurance Company on its annuity policy premiums for 1933 were paid voluntarily, and are not here involved. The taxes paid on such annuity premiums for the years 1934 and 1935 were paid under protest, and only after demand was made for the payment thereof by the State, and while the State officers were withholding the Insurance Company's certificate of authority to do business in this State, and were threatening such Company with the loss of such authority unless it paid such taxes. Taxes paid under such circumstances are taxes paid under duress. Austin National Bank v. Sheppard, supra; National Biscuit Co. v. State, supra.

It is settled as a law of this State that a person who pays money into the State treasury under duress has a legal and valid claim against the State for its refund. It is also settled that in such instances the Legislature has the lawful right to make refund appropriations. Austin National Bank v. Sheppard, supra; National Biscuit Co. v. State, supra. It follows that this appropriation is legal, as applied to so much thereof as is required to refund the taxes paid in 1934 and 1935, in the sum of $11,130.39, unless such appropriation is invalid for reasons we shall now discuss and decide.

At the time the taxes here involved were wrongfully demanded and paid, Chapter 214, Acts 43rd Legislature, 1933, page 637, was in force. This Act is generally termed a protest

statute. We shall not burden this opinion with an extended statement of the provisions of this Act, but we will here mention such salient provisions as we deem necessary to make plain the questions of law we shall decide.

Section 1 of the above Act provides:

"Section 1. Any person, firm or corporation who may be required to pay to the head of any department of the State Government any occupation, gross receipt, franchise, license or other privilege tax or fee, and who believes or contends that the same is unlawful and that such public official is not lawfully entitled to demand or collect the same shall, nevertheless, be required to pay such amount as such public official charged with the collection thereof may deem to be due the State, and shall be entitled to accompany such payment with a written protest, setting out fully and in detail each and every ground or reason why it is contended that such demand is unlawful or unauthorized."

Section 2 gives the party paying taxes or fees under protest ninety days from the date of payment within which to file suit for the recovery thereof.

Section 3, in effect, requires the State Treasurer to place the tax or fee money paid under protest in the State depositories in a suspense account. This section and other sections of the Act require that such suspense account money must remain in such account, and not be placed in the State treasury, until its ownership is adjudicated in the court action provided by the Act.

Considering the Act as a whole, it provides that when money is paid under protest and suit is filed to recover it within ninety days, such money must remain in the suspense account, and out of the State treasury, until the suit is finally decided. If the final judgment in such suit adjudges that the money was lawfully demanded and paid, the State Treasurer must deposit same in the State treasury, and allocate it to the funds to which it belongs. On the other hand, if money covered by this statute is paid under protest, and is placed in the suspense account provided by the statute, and the party paying fails to file suit for recovery within ninety days from the date of payment, as provided by the statute, is becomes the duty of the State Treasurer to deposit same in the State treasury, and

allocate it to the several State funds to which it belongs. If suit is filed and the money is adjudged to have been wrongfully demanded and paid, it is returned to the party paying, and no legislative appropriation is required, because such money has never become the property of the State or gone into the State treasury. This statute applies only to instances in which any person, etc., may be required to pay to the head of any department of the State Government "any occupation, gross receipt, franchise, license or other privilege tax or fee."

In this case the Insurance Company paid the taxes for 1934 and 1935 here involved under protest, as required and provided by the above protest statute. Also, we gather from the agreed facts that the State Treasurer in all things obeyed the law by placing such money in the suspense account above mentioned, and allowed it to remain therein for the ninety days provided by law. The Insurance Company filed no suit to recover such money during the ninety days period provided by the statute. The State Treasurer therefore obeyed the statute and deposited the money in the State treasury, allocating it to the several funds to which it belonged.

■ A reading of the above statute will disclose that it requires the taxpayer to pay the amount demanded by the public official, whether the tax demanded be legal or illegal. The party affected has the remedy of paying under protest. He is then given the right to file the suit provided by the statute. Since the effective date of this statute, this Court has held that, in instances where it affords an adequate legal remedy, the equitable remedy of injunction no longer exists. Rogers v. Daniel Oil & Royalty Co., 130 Texas 386, 110 S. W. (2d) 891.

■ It is the opinion of this Court that the provision of Section 2 of the appropriation Act here involved, which provides that no claim shall be paid unless it is approved by the Attorney General and the Comptroller, is not intended to clothe such officials with arbitrary power to approve or reject claims as they may see fit. To the contrary, such provision merely clothes such officials with the power to investigate the facts regarding any claim and then apply the law thereto. In this connection, the law contemplates that approval shall follow as a matter of course, if the facts show that the claim covered by the appropriation is a claim for the payment of which the State was legally liable at the time the appropriation became effective. The Attorney General does not question this construction. He

simply contends that, as regards this claim, the State was not legally liable thereon at the time this appropriation to pay it became effective. The basis for this contention we will now consider and decide.

Under the foregoing undisputed record the Attorney General contends that this Insurance Company did not pay the taxes here involved under duress. Of course, unless it so paid, it cannot have awarded to it the mandamus here prayed for. Section 44, Article III, Texas Constitution; Austin National Bank v. Sheppard, supra; National Biscuit Co. v. State, supra. The contention that these taxes were not paid under duress is based on the proposition that when this Insurance Company paid these taxes under protest, and "under and by virtue of and in reliance upon the protest statute, it cannot now legally claim that it paid under duress." Stated in another way, the Attorney General contends that, "since it admittedly paid the tax under the protest statute with knowledge that the fund would be held in the suspense account for ninety days, and longer if suit was fixed by it to recover the tax, it cannot now change its position and claim it paid the tax under duress rather than under protest." In support of the above contentions the Attorney General cites, among others, the following authorities: Rogers v. Daniel Oil & Royalty Co., 130 Texas 386, 110 S. W. (2d) 891; Arkansas Building & Loan Assn. v. Madden, 175 U. S. 269; Black v. Geissler, 58 Okla., 335, 159 Pac. 1124; Snyder v. Marks, 109 U. S. 189; Shelton v. Platt, 139 U. S. 591; in Re Morris Blatt, 41 New Mex. 269, 67 Pac. (2d) 293, 110 A. L. R. 656; Wheatland v. City of Boston, 202 Mass. 258, 88 N. E. 769; Gaar Scott & Co. v. Shannon, Sec'y. of State, 223 U. S. 468. As we interpret the above authorities, they may be divided into four classes:

1. The first class comprises those cases which hold that where an adequate remedy at law is provided to protect one who is compelled to pay an illegal tax, the equitable remedy of enjoining the collection of such tax does not exist. These cases merely follow the well-established rule that where an adequate remedy at law is provided, equitable relief will not be awarded. Rogers v. Daniel Oil & Royalty Co., supra; Arkansas Building &Loan Assn. v. Madden, supra; Block v. Geissler, supra; Snyder v. Marks, supra; and Shelton v. Platt, supra, fall in this class of cases. In our opinion, this Insurance Company invoked no equitable remedy when it presented to the Legislature its claim for refund of taxes wrongfully demanded and col-

lected; and neither did the Legislature exercise any equitable jurisdiction when it made this appropriation.

2. The second class comprises those cases which hold that where a statute creates a right which did not exist at common law, and prescribes a remedy to enforce such right, the court can act only in the manner provided by the statute which created the right. This rule includes the further rule that in such cases where the statute prescribes the time within which the right must be exercised, the limitation thus imposed is of the very essence of the right itself; and one who seeks an enforcement of the right must show affirmatively that he has brought his action within the time prescribed by the statute. In Re Morris Blatt falls within this class of cases. We find no fault with the rule as applied to a proper case, but it has no application here. In this case this Insurance Company asserts no right created by the protest statute. To the contrary, it asserts a right founded on a legislative appropriation made to pay a common law demand,—to-wit, illegal taxes paid under duress.

3. The third class comprises those cases which hold that in an action to recover a tax, a statute of limitation barring such action will be applied and enforced. Wheatland v. City of Boston falls within this class of cases. In the case at bar the Insurance Company is not met with any statute of limitation which bars the right of the Legislature to make this appropriation. The ninety days prescribed by the protect statute has no application here, because no right is asserted under such statute.

4. The fourth class of cases comprises those which hold that not right exists to recover a tax not legally due, if it is paid voluntarily and not under duress. Gaar Scott & Co. v. Shannon, supra, falls under this class of cases. Also Austin National Biscuit Co. v. State, supra, so hold. There is no contention in the case at bar that this Insurance Company was legally liable for the taxes here sought to be recovered.

In our opinion, no authority has been cited which would justify us in holding this Insurance Company a volunteer in paying these illegal taxes. It is certainly undisputed that it acted under duress when it parted with its money and delivered it over to the State's collecting authority. To our minds, that constitutes the crucial test. When we give effect to Section 7 of the protest statute here under consideration there is no es-

cape from this conclusion. Such Section provides: "The provisions of this law shall be cumulative of all laws relating to the payments of taxes or fees of undetermined status and for the holding thereof in the suspense account fund of the State Treasurer." As applied to the facts of this case, the statutory provision just quoted evidently means to say that the protest statute of which it is a part is not intended to destroy the legal right of reimbursement for taxes wrongfully demanded and collected under duress, but that such protest statute is merely cumulative of such right; or, stated in another way, is in addition thereto.

This case has been submitted in this Court on a motion to file petition for mandamus with the agreement, on the part of both the relator and the respondent, that the case may be decided on its merits on such motion. It is therefore ordered that the motion to file petition for mandamus herein be, and the same is hereby, granted. It is further ordered that the mandamus shall issue as prayed for by the relator.

Opinion delivered December 31, 1941.

Rehearing overruled February 4, 1942.